**VOLUNTEER STATE BANK, and the
Farmers Bank**

v.

**NATIONAL BANK OF COMMERCE,
and Robert L. Clarke, Comptroller
of the Currency of the United States.**

No. 3–87–0800.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 5, 1988.

Joseph S. Reeves, III, LaDon Baltimore, Broemel, Reeves and Baltimore, Nashville, Tenn., for Volunteer State Bank.

Jef Feibelman, John A. Stemmler, Kathy Hayek, Burch, Porter & Johnson, Memphis, Tenn., for National Bank of Commerce.

Carl Douglas Thoresen, Asst. U.S. Atty., L. Robert Griffin, Madonna K. Starr, Office of Comptroller of the Currency, Washington, D.C., for Robert L. Clarke.

## MEMORANDUM

WISEMAN, Chief Judge.

On October 2, 1987, the Comptroller of the Currency of the United States approved applications of the National Bank of Commerce, (NBC), a national banking association located in Shelby County, Tennessee, to establish five branches outside its home county. Plaintiffs, Volunteer State Bank (Volunteer) and The Farmers Bank (Farmers), state chartered banks of Sumner County, Tennessee, brought suit in this Court seeking a permanent injunction against the action of the Comptroller and NBC. Plaintiffs allege that permitting the national bank to branch statewide violates one provision of the National Banking Act, the McFadden Act, 12 U.S.C. § 36 (1927 & Supp.1987). Plaintiffs and both defendants have filed motions for summary judgment which the Court now addresses.

### The Federal Statute

12 U.S.C. § 36(c) provides in pertinent part:

A national banking association may, with the approval of the Comptroller of the

Currency, establish and operate new branches ... (2) *at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question* ... affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.

(emphasis added).

12 U.S.C. § 36(h) defines "state bank" as follows:

The words "State bank," "State banks," "bank," or "banks," as used in this section, shall be held to include trust companies, savings banks, or other such corporations or institutions carrying on the banking business under the authority of State laws.

The national debate about federal power over the banking industry and the Congressional history of the McFadden Act of 1927, is thoroughly described in *First National Bank of Logan v. Walker Bank & Trust Co.*, 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966), and will not be repeated here. Suffice it to say that "Congress intended to place national and state banks on a basis of 'competitive equality' insofar as branch banking was concerned." *Id.*, 385 U.S. at 261, 87 S.Ct. at 497. Thus, the Comptroller's action in this case granting NBC the ability to branch beyond its home county is valid only if Tennessee authorizes "State banks," or "other such corporations or institutions carrying on the banking business under the authority of State laws" to establish such branches. 12 U.S.C. § 36(h).

■ However, federal law governs in definition of the seminal terms "State bank" and "banking business." To do otherwise would make states "the sole judges of their own powers." *First National Bank in Plant City v. Dickinson*, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969).

*The Tennessee Statutory Scheme*

Tenn.Code Ann. § 45–2–614(a) proscribes branching of a state commercial bank beyond the county of its principal office.

Branch banking.—(a) No corporation, firm, or individual shall create and operate any branch bank, office, agency, or subsidiary corporation for the purpose of receiving deposits, paying checks, making loans, or receiving or discounting bills or notes *in any place whatsoever other than the county wherein its principal office is located and its principal banking business is carried on.* This section shall not apply to branch banks, offices, or agencies maintained and operated on April 6, 1925, by a corporation, firm, or individual doing or carrying on a banking business in the state in places other than the county of this state wherein such banking business is carried on.

(emphasis added).

But, in a "wild card" provision, Tenn. Code Ann. § 45–2–601, state banks are authorized to do anything a national bank may do:

General powers.—Subject to regulation by the commissioner and any restrictions expressly imposed by chapters 1 and 2 of this title, any bank may enjoy any and all rights and may exercise any and all powers, as defined herein, conferred upon banking corporations for profit by the Tennessee General Corporation Act, compiled in title 48, chapter 1, parts 1–14, as same may be amended from time to time. In addition thereto, *any state bank may exercise any power or engage in any activity which it could exercise or engage in if it were a national bank located in Tennessee,* subject to regulation by the commissioner for the purpose of maintaining the state bank's safety and soundness.

(emphasis added).

State chartered savings and loan associations, if more than five years old, may branch anywhere in the state.

*Geographic limitation.*—Any association may establish and maintain a branch or satellite office in any location meeting one (1) of the following criteria:

(1) Such office may be located in the county in which the home office of the association is located;

(2) Such office may be located in any county contiguous to the county in which the home office of the association is located provided that such association has been chartered for a period of at least two (2) years;

(3) Such office may be located in any county in the state of Tennessee provided that such association has been chartered for a period of at least five (5) years.

Tenn.Code Ann. § 45–3–301. These financial institutions also have a "wild card" provision, Tenn.Code Ann. § 45–3–106, authorizing them to do anything a federally chartered savings and loan may do.

Such state chartered savings and loans may call themselves *"savings banks"* Tenn.Code Ann. § 45–3–209. A "savings and loan association" or "savings bank" is authorized to:

1.  accept deposits, pay interest thereon, and to lend and invest its funds;
2.  acquire, hold, sell, dispose of, convey, mortgage, pledge, or lease any real or personal property;
3.  borrow money on notes, bonds, debentures or other obligations or securities;
4.  sell loans or participating interests therein;
5.  maintain insurance on accounts;
6.  be a member of the Federal Home Loan Bank or other organization;
7.  maintain and rent safe deposit boxes;
8.  sell money orders and travelers checks;
9.  act as fiscal agent of the United States, the state and local government;
10. service loans and investments for others;
11. act as trustee for IRAs;
12. have stock option plans;
13. engage in electronic funds transfers.

See Tenn.Code Ann. § 45–3–105(1–13). Furthermore, "savings and loans" or "savings banks" are authorized to make all manner of loans. Tenn.Code Ann. § 45–3–701 through 707.

### Definition of "State Bank" and "Banking Business"

The McFadden Act specifically includes "savings banks" in the term "state banks." 12 U.S.C. § 36(h). This section on branching does not define "banking business." However, the Comptroller relies upon the corporate powers section of the National Banking Act, 12 U.S.C. § 24, in which national banks are authorized

> such incidental powers as shall be necessary *to carry on the business of banking;* by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing and circulating notes....

(emphasis added). In his decision authorizing the NBC branches in this case, the Comptroller compared these powers to the similar services authorized to Tennessee savings and loan associations (savings banks), and found that such thrift institutions were carrying on "banking business."

In a case on all fours with the one at bar, the Fifth Circuit Court of Appeals approved a Comptroller's decision authorizing branches in Mississippi because national banks were competitively disadvantaged by the authority granted to state chartered savings and loans. *Dep't of Banking and Consumer Finance v. Clarke,* 809 F.2d 266 (5th Cir.1987). Employing a "targeted functional analysis," it found the business of banking, stripped to its essentials, as accepting deposits, paying checks, and making loans. *Id.* at 268. That court further found the Comptroller's factual findings that Mississippi savings associations were doing "banking business" and were therefore "state banks" under 12 U.S.C. § 36(h) was patently correct.[1]

---

**1.** This Court is aware of the contrary opinion of the Ninth Circuit in *Mutschler v. Peoples Nation-* *al Bank of Washington,* 607 F.2d 274 (9th Cir. 1979). In the absence of authority from our

*Scope of Review*

■ This Court may not hold the action of the Comptroller unlawful unless it is found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A). When an implicit gap in legislation is filled by a regulatory agency, this Court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the agency. *Chevron U.S.A. v. National Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

> ... If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.

(citation omitted). 467 U.S. at 845, 104 S.Ct. at 2783.

■ This Court, having reviewed the legislative history of the McFadden Act and the record before the Comptroller, can say neither that his decision is unreasonable, nor that it would not be sanctioned by Congress. The statutory purpose is to keep national banks from being competitively disadvantaged. The Court takes judicial notice of the dramatic changes that have occurred in recent years in the financial industry, and in particular, of the expanded powers and competitive advertising of thrift institutions in their successful attempt to engage in the "banking business."[2] Federally chartered savings and loans have engaged in statewide branching in Tennessee because under their "wild card" statute, they may do as state chartered savings banks may do. The ruling of the Comptroller in this case merely creates

a level playing field for nationally chartered banks[3] and further enhances competition in the financial industry.

For all of the foregoing reasons, plaintiffs' motion for summary judgment is denied; defendants' motion for summary judgment is granted with reasonable costs.

---

own Circuit, this Court finds the reasoning of the Fifth Circuit far more persuasive and declines to follow the *Mutschler* decision.

2. *See* Sayers, *Bank Expansion and Probable Future Competition and Bank Mergers: Defense Blueprint for the 1980's*, 99 Banking L.J. 882 (1982).

3. At oral argument on these motions, the Court requested an affidavit from the Tennessee De-

partment of Financial Institutions as to its policy with regard to branching by state chartered banks. The affidavit of Assistant Commissioner Edge in the record states that the Department is approving statewide branching for state chartered banks because of the banking "wild card" statute. Tenn.Code Ann. § 45–2–601. Thus, the playing field is truly level for all.